Good morning, Your Honor. Jim Monroe appearing for Appellant Ta Chong Bank. In this case, it's a 12B6 dismissal of a complaint filed by Ta Chong Bank. The dismissal wasn't based on what was alleged in the complaint. The complaint's pretty straightforward. It's a complaint for the bank on a factoring agreement to recover the amount of outstanding, to recover the amount of a mispaid payment from Hitachi Corporation. The bank financed some receivables for Cyber Home Electronics in 2005. But if you don't mind educating me from a fairly basic level, how does this factoring arrangement work? Does the bank actually pay, does it buy the account receivable, does it pay over the amount, and then it just simply owns the account receivable and Hitachi pays them and that's the end of it? Or is it a lending agreement somehow? How does it work? They're both basically treated the same. In this case, the paperwork is more in the nature of a lending agreement than in the nature of an actual purchase of the receivable. So there was a large loan outstanding from Ta Chong Bank to Cyber Home. The balance was approximately $82 million when it filed bankruptcy. The loan funds were advanced against invoices, certain invoices of Cyber Home. So when they sold product, the amount of those invoices was advanced to Cyber Home by the bank and it added to the line of credit. I see. So the bank never actually owns the account receivable. It's always a security holder rather than an owner of it. In this case, the bank would be a security holder of the asset as opposed to an actual owner. It never purchases the amount. It can happen either way. And both are covered by Article 9. But in this case, there was not a purchase of the account receivable. That is correct. So when recoveries would be made, it would be applied in reduction of the amount of the line of credit as opposed to just collecting the money and not accounting to the bank. This arrangement had been entered into for a number of years between Hitachi, between the bank and Cyber Home. And the bank had a relationship with CIT to collect these receivables. The bank is a Taiwan bank. It had a corresponding relationship with CIT to collect the receivables on behalf of the bank and then wire those funds to the bank in Taiwan. The invoices that are generated when there's an assignment of the receivable says clearly at the bottom, as it does in this case, that this is an assigned invoice and that you must pay CIT to discharge this invoice and that if you don't pay CIT, you can be subjected to double liability. And the basis for that is 9406 of the California Commercial Code, which provides for the free assignability of accounts receivable and the factoring of those and requires that, after notice, any payment on those receivables be made to the S&E, here the bank via CIT. Contrary to the notice that Hitachi was provided with, it paid Cyber Home directly $1.2 million. Now, again, this is not an area of law with which I'm intimately familiar, so you're going to have to just bear with me if you don't mind. Absent bankruptcy, let's assume that everything happened as it did. That is to say, we have the factoring agreement by which the bank lends money, secured by the accounts receivable. Hitachi receives notice that it's supposed to pay CIT, who's your agent for receiving the money. Hitachi doesn't pay you. Instead, it pays Cyber Home. Absent bankruptcy, what happens at that point? And that's what I was getting to, Your Honor. At that point, Hitachi is exposed under 9406 of the Commercial Code. Once an account debtor, here Hitachi, receives notice that it needs to pay the lender rather than its vendor, which was Cyber Home, only payment to the lender discharges the indebtedness. I know. I got that. So I'm asking you, what happens if they pay the vendor instead of the lender? Under 9406, they're subjected to double liability for that payment because it didn't discharge the debt, and the bank is still entitled to collect that debt as the owner of the debt. Okay. But I'm also asking, not only subject to, but in the real world, what happens? That is to say, does the bank go after them? Or when the bank says, wait a minute, you owe us the debt, and you guys are just doing internal bookkeeping. I mean, what happens? It could proceed either way. And I would suspect that in the absence of insolvency, you would account for it and try to get the money back from your borrower in the first instance, rather than filing a lawsuit, because that would be a lot more expedient to get the money back from the borrower than to have to file a lawsuit to get the money. Now, again, this is not what happened. Let's assume that Hitachi goes bankrupt. Having made a payment to Cyberhome instead of to you, Hitachi goes bankrupt. You now think that that money should have come to you, as indeed it should have, but it didn't. Do you have a good cause of action against Cyberhome for that money? Well, it's not really a separate cause of action against Cyberhome. It's a separate cause of action against the bank. So that loan balance goes up and down with the application of the collection of accounts receivable over time. So if it was at $82 million and $2 million were collected, it would go down to $88 million. I see. So it's just that the loan balance isn't accredited against that amount. Because the $1.2 million went to them, they still owe you the $1.2 million. Right. They never paid it over, so the loan balance didn't get reduced like it should have been. Right. Okay. Now, all of this, for me, is helpful, but where we end up, then, is we get Bankruptcy Judge Gellin with this very general, broad order, and the district judge says, res judicata, you guys are out of luck. How do you respond? I mean, it basically is a res judicata case, as I see it. How do you respond? Right. Because the — and technically, it's a couple of bankruptcy statutes and a technical preference case. The bank did not — and whether it's an actual sale of the accounts receivable or a lending relationship with the accounts receivable, under Article 9 of the Commercial Code, a creditor, to perfect its security interest, is required to file a UCC1 financing statement with the Secretary of State of California, since the debtor here is in California. The bank did that, belatedly, within 90 days of the date of CyberHome's bankruptcy. The effect of that is, because of 547 of the Bankruptcy Code, is that that security interest, the perfection of that security interest was avoided as a preference, because the filing of a financing statement is considered to transfer a property of the debtor within 90 days of the filing, which can be avoided by the trustee's use of 547B of the Bankruptcy Code, the preference avoidance provisions. 90 days, so it's avoidable preference, sir. Right. And then, following on that, the bankruptcy court — so the bankruptcy court held that the took over this case, because it's pretty cut and dry. It happened within 90 days of bankruptcy. There wasn't an issue. It was a preference. And it was avoidable. And that's under 547B. And the second step is, then, under 544A of the Bankruptcy Code, as to the bankruptcy estate, the security interest was avoided, unenforceable is a better way to say it, as to accounts receivable that the debtor — that the trustee in bankruptcy was trying to collect. So it precluded Ta-Chung Bank from that point forward, from the petition date forward, in fact, from collecting further collections of any of these accounts receivable in competition with the bankruptcy trustee. And we don't dispute that, that once the order was issued — before the order was issued, once we got involved in the case and saw, you know, what was being claimed, Ta-Chung Bank ceased collecting any further accounts receivable. And at that point, it was treated as an unsecured creditor against the estate. So it had an $82 million claim against the bankruptcy estate. Now, the issue here — and that's all the bankruptcy court's order said. It said that the security interest is — the perfection of the security interest is avoided as a preference, and the lien rights of the bank are unenforceable with respect to accounts the estate's collecting. Wait a minute. My problem, in part, is that that order from the bankruptcy judge is so general. I mean, defendant's security — I'm just reading now, Arabic II — defendant's security interest in the debtor's receivable and inventory is unperfected, Roman III. So the question is, what does he mean by receivables? Does he include in receivables those things that have already been received? It's a defined term in 547 of the bank. Something ceased to be receivable once received? Yes. It's not a receivable once it's received. A receivable is something that's unpaid. So once it's received, it's not a receivable. It would be a pile of cash. And we were precluded from enforcing our interest against receivables that remained outstanding and, you know, cash in the trustee's possession, both of those, as proceeds of receivables. So the trustee got to collect it all. So the trustee collected a bunch of money, say, since the bankruptcy was filed. All of that money was free and clear of Todd Chung's claims under the terms of the bankruptcy court order because the lien was a preferential transfer. Right. Who screwed up here? Well, I mean, there wouldn't be an issue here. I guess there's two sides on that equation. Hitachi paid the wrong party, and the bank should have perfected earlier to avoid any problems with not this claim, but with all of the other money that it lost as a result of not having a perfected security interest against the assets being collected by the bankruptcy trustee during the bankruptcy case. The bank should have been the recipient of the payments. The bank would have been the recipient of the payments if more than 90 days prior to the bankruptcy, it would have recorded the UCC-1. Unfortunately, it didn't do that, which, you know, happens now and again. And so they took a loss as a result of not being perfected in what the bankruptcy estate was collecting. Now, the Hitachi issue, though, is different. That's not a receivable. It was paid eight months before the bankruptcy was filed, and that's when, although the bank wasn't aware that the payment had been improperly made, that's when the bank's rights arise. At that point, they have a claim for mispayment of those funds against Hitachi for the full recovery of those funds. Would the bank have a claim against Hitachi if instead of the bank paying $1.2 million to Cyberhome, Hitachi simply never paid, period, and they were delinquent? Yes, and that would be a different case. That was the case with all the other receivables that were still existent at the time in the bankruptcy. If Hitachi never paid and the bankruptcy was filed, then the trustee would have had the cause of action to go after Hitachi to recover that receivable instead of the bank because it fell within the terms of the court's order. So you have a cause of action against Hitachi only by virtue of them actually having paid instead of being delinquent. That's a good reward for Hitachi. Well, I mean, there was a lot of activity that took place in the months outside the 90-day period. The bank had this factoring arrangement for a number of years, so there were a lot of payments made to the bank, a lot of receivables collected by the bank, and none of those transactions are impacted by the bankruptcy. The preference avoidance action doesn't go back and unwind those transactions that occurred eight months, nine months, a year earlier in the process. It only unwinds what occurred in the 90 days. But what intrigues me is the validity of your cause of action against Hitachi is dependent upon the fact that they paid money to Cyberhome, and if they'd never paid anything, they would owe you nothing. Well, they wouldn't owe us nothing, but as a result of the financing statement being avoided, it was payable to the trustee because it had superior rights with respect to everything that remained uncollected. So the collections the bank was lucky enough to get before bankruptcy reduced the debt, and it was applied to the bank's loan. It's the recoveries after bankruptcy that are the recoveries that are implicated by the bankruptcy court order. Your time's run way down, but we'll give you a chance to respond. We'll give you more than the six seconds that remain on the clock. Thank you. Good morning, Your Honors. My name is Richard Vasquez, and I represent Hitachi High Technologies of America, which, in fact, paid the $1.2 million to Cyberhome, the bankrupt debtor. And the issue... You don't contest that you paid to the wrong party. Yeah. I don't know that we'll get to that issue because we didn't get a chance to present that issue. Who did this? Who did it? Who did this? Yeah. Which aspect? You asked a good question. Which CEO bit the dust on this one? Well, why don't I go into it in the context of my presentation, because I think I can answer your question. The real question is, should Tachank Bank be allowed to get a double payment when, in fact, they presented to the same issue that they're presenting today, the same issue that was presented before Judge Hamilton in case number two, was presented and adjudicated in the prior action by Judge Gellin? And not only that, but my esteemed counsel presided over and prepared that broad general order that you talked about. So there was no surprise. There was, in fact, a purposeful availment of the bankruptcy court to litigate the issue of the validity of the factoring agreement and the ownership of the $1.2 million invoice. So the common transactional nucleus effects, which is the res judicata element that you I'm not sure we're talking. You just gave me a claim preclusion, res judicata. I think we're talking about issue preclusion. It could be not common nucleus of operative effect, but rather actually litigated and decided. Well, I think we can satisfy either test, Your Honor. Obviously, Judge Hamilton thought it was res judicata issue. Well, res judicata, I mean, this is just elementary vocabulary, is an umbrella term which can include both claim and issue preclusion.  I think this is probably issue preclusion, unless you can talk me out of it. No, I think you're right. The important part is that you have the bank trying for a second bite at the apple in the second case when they already elected to avail themselves of the bankruptcy court jurisdiction to determine the validity of the factoring agreement, whether there was one in existence and whether there was ever a sale to the bank of the property. Now, to the degree that we're talking issue preclusion and therefore the ordinary black letter requirement of issue preclusion is actually litigated and decided. Sure. Do we know that Judge Gellin focused on this $1.2 million payment, or did he just focus generally on accounts receivable? Well, the way that you answer those questions under the law is you look to the pleadings which frame the issue, and then you look to the language of the order. So let's do that. The pleadings which frame the issue occurred, it wasn't by accident. Okay. It happened three times. In the proof of claim, Ta-Chung Bank tendered the issue to Judge Gellin by tendering the factoring agreement as proof of its attempt to get a security interest so it could go to the front of the line. So the factoring agreement was at issue. The $1.2 million invoice was at issue. It was in a pile of 51 invoices. Those are the identical facts which they try and support their claim against Hitachi. By tendering the meaning of that factoring agreement and whether it was valid in the first action, they put at risk whether they would ever have anything to plead in the second action. And so counsel has also what I would characterize as grossly mischaracterized the adversary action by the bankruptcy trustee. So after the bankruptcy action was filed, Ta-Chung puts in its proof of claim. The next step was the trustees looked at the proof of claim and said, I don't believe that that factoring agreement ever existed, and I want a declaration of law from Judge Allen that there was no sale pursuant to the factoring agreement of any of the 51 invoices. Now, that's set forth very clearly in the fourth cause of action of the adversarial claim, and it's styled validity of the factoring agreement. The next thing that happened was an answer was filed by the bank where they agreed that there was a controversy about the meaning of the factoring agreement because they matched up paragraph 29 in their answer with 29 that said there was no factoring agreement, and they said we admit that controversy exists, but they denied the import. So there was a direct putting at issue in this fourth cause of action and an answer denied. Let me back up if you don't mind. Sure. I gather the trustee was putting at issue whether or not there had been a sale. I mean, that is one kind of factoring agreement. My understanding is that's the normal usage of the term if it's a factoring agreement. He was very specific. I purchase, but I've just been told that's not what this is. This is an open line of credit secured by accounts receivable. The all we can discern is what the record says, and the record says fourth cause of action, determination on the factoring agreement, which is the overarching entitlement to ownership of the invoice, and also a determination whether a sale took place. Now, the trustee denied that the factoring agreement existed. He denied that a sale took place. He then proceeded to a preliminary motion, and the Court issued an order to show why the bank should not be sanctioned for filing a sham answer. Then the next thing he did was file a motion for summary adjudication to adjudicate this issue presented by the fourth cause of action, whether there was a valid factoring agreement and whether or not the ownership of the invoice had transferred. The final order was prepared not by the trustee. It was prepared by Mr. Monroe. It's got his pleading on it, and he prepared it. That broad language was clearly understood by the bank, and that broad language states very clearly that, number one, there was no secured interest. Number two, the unsecured interest was voided by operation of law. And number three, there was no lien whatsoever in the proceeds. Here's his answer to that. He has to say he distinguishes between accounts receivable and accounts received. That is to say, the $1.2 million has been received. So, I mean, okay, that maybe isn't covered by the order. Well, the order does cover it. It covers... Then that comes under inventory? Inventory, receivables, and proceeds. Okay. Proceeds would be anything collected. Hang on a second. But as to receivables, instead of the operation that would happen absent bankruptcy, where the payment is supposed to come to the bank, as to receivables, that now has to go to the bankruptcy trustee. As to money that's already been paid, that is to say, money that's already been received by CyberHome, I don't know that this is covered here. Well, it says that it is, Your Honor. Where? The word proceeds means the proceeds from the receivables. And there was, in fact, a counterclaim by the bank that was instituted that said CyberHome... No, I mean, we're still at cross purposes here. Okay. What clearly is going on here is that Judge Gellin is adjudicating what interests the bank has as against the bankruptcy estate. I'm trying to figure out whether he has decided whether the bank has any enforceable interest against Hitachi. It's clear that he does not have any interest against Hitachi as to money that Hitachi has paid to nobody. That part's clear and seems to be undisputed. The issue is whether or not there's a cause of action that remains against Hitachi outside of the bankruptcy estate. So let me address that. That's the lawsuit here. Their claim is this has nothing to do with bankruptcy. This is a freestanding obligation that you have not discharged. So we chose to attack the complaint under 12b-6. Under 12b-6, you look at the causes of action asserted. There's one for account stated. There's one for an open book account. Neither of those obtained because they didn't own the receivable. They cannot allege that they own a receivable where there is an underlying judicially noticed, which you take consideration of the judicially noticed record in the 12b-6 motion. The judicial notice was taken of a court order that said they have no interest whatsoever and that the only interest in those receivables is owned by the bankruptcy estate. So their interest, their ownership interest was tendered by themselves when they tendered the proof of claim. It was elevated and heightened when the bankruptcy trustee chose to attack the factoring agreement. And when that ruling came out that said you have no secured interest, no unsecured interest and no lien, they had nothing left to go after Hitachi with. Yet what they did was they went into state court. They didn't mention this bankruptcy court order. They didn't mention 9406. Their complaint doesn't articulate any 9406 rights. But even if it did, they don't have any because they don't they no longer have ownership or the ability to claim ownership because of the disposition of the earlier order. Let me ask you this, and this is now not the case in front of us. I'm just trying to get my law straight. Sure. If this had been what I think is a normal, what's normally meant by a factoring agreement, if in fact the bank had actually purchased the liability so that they'd simply paid over, you know, I'll pay you $1.1 million and I now have the right to go after Hitachi as the owner of the account receivable for 1.2, would your answer be different? That is to say, the bank purchases, they pay $1.2 million. It's an outright purchase. I now own the obligation. Hitachi doesn't pay the bank, which it's supposed to do, but rather pays cyber homes. Cyber home then goes bankrupt. In that circumstance, would the bank have a good cause of action against you outside of the bankruptcy? If the bank had not tendered the issue of that to the bankruptcy court and been ruled against, it would be a different case. That's not my question. Because I don't think they tendered that issue. Meaning, how... Put into one side the res judicata effect of the order here. And so I'm asking in a way to predict what the bankruptcy judge is going to say. So we have the following. Cyber home enters into a transaction with Hitachi, supplies them product. Hitachi owes them $1.2 million. Cyber home doesn't want to wait for payment from Hitachi. So it sells the account receivable outright to the bank. The bank pays $1.1 million. The bank is now the owner of the account receivable. Hitachi then pays, by mistake, $1.2 million to cyber home. Cyber home goes bankrupt. Now, the bank comes after Hitachi. Can they bring that suit independent of the bankruptcy? And I don't have Judge Gellin making an order here. I'm just asking what happened. And so you're basically saying, had Ta-Chung Bank chose to pursue Hitachi instead of going into the bankruptcy court, it would be in a different state of affairs. Well, and I'm also changing what I think are the underlying facts of this case. I'm turning this into a purchase of the account receivable rather than into a secured lending arrangement. Correct. And I think that would make it a more solid case. There are facts outside the record. A more solid case for whom? It would make it a more solid case for the bank, had they not done what they did and had they purchased outright the receivables. And then we would transpire to the notion of what was the character of the notice of that purchase to Hitachi. Because that's an element of the case not present. It's an element, if the case continues, would be present. Okay. Okay. Thank you. That helps some. Thank you, Your Honor. I'll just reserve my time if needed. No, you're done. I'm done. You're not done if you don't want to. But you can't reserve time because this is your time to talk. No, that's fine. So the second issue, and I don't think it's a big one, but we didn't talk about Rule 59e because they did move that the denial of the Rule 59e motion was erroneous. And I would just point out to the Court that they didn't move under new facts, newly discovered facts or new laws. So the issue comes down to, was there a clear error of law? And so at some level, it's a duplicative inquiry. At another level, they never mentioned the race judicata issue. So I think that they lose on 59e no matter what. They didn't raise any issue except for a timing error in the recitation of facts. And the lower court properly looked at that and said, that's not what supports my order. And so if that issue arises, I would want the Court to note that race judicata was not even mentioned there. And the Court noted that in its order. Thank you. Just a few minutes, Your Honor. The Rule 59e motion was addressed just to that one mistake, just to both clarify. We thought the Court was wrong because of that material. We thought it was material that the Court believed that the payment by Hitachi was post-petition, which was a situation where we believed the bank would lose. And that was the only issue raised, both to have the Court focus on that and to clarify this appeal. Otherwise, it would have been a little bit of an uncertain record as to exactly what the district court ruled on in the absence of that 59e motion. It wasn't meant to re-argue the case. And what do you think that Judge Gellin decided? What I think, Judge, what Judge Gellin decided, he didn't decide anything with respect to the $1.2 million. It wasn't before the judge. That payment, the bankruptcy estate's not even interested in that. Let me ask you this. You did submit a claim for the $1.2 million against the estate of the bankrupt, correct? No. What we submitted the claim for. No? You never did that? No. Well, we submitted a claim. We submitted a claim for $82 million for the balance due. And did that include the $1.2? We, yes. Not specifically. But we had a listing of what we believed were the unpaid accounts receivable attached to the claim. Because the original claim was filed as a secured claim. So Cyberhome had a lot of receivables that had been assigned to the bank that hadn't been collected yet. And the bank filed a secured proof of claim because it thought it was secure. And the reason why I thought it was secure, this is a former counsel, so I'm a little bit vague on this. Thought it was secured because it believed that it was a purchase of accounts receivable that the financing statement didn't matter. Yeah. But it turns out it's not a purchase. But it doesn't matter. Whether it's a purchase or... Well, excuse me. Whether it matters or not, let me ask you. But it was not a purchase. Was not a purchase. But it doesn't matter. Either way, you have to file a UCC-1. The code is clear. And we briefed that. Page 14. Under 9109. That has to be filed either way. So either way, the claim would have been avoidable into the future as a preference. Because a UCC-1 had to be filed whether it was a purchase or a loan. Now, as to the bankruptcy court order, it's a pretty simple order. What it says is that, and it's a common order. And I did have a hand in drafting the order. It's not really... Your name's on it, right? I mean, I negotiated it with the trustee's counsel. And I modified it and sent it back to him. And we got a file with the court. The order avoids the bank's security and avoids the bank's perfected security interest. And the effect of it is that the bank has no interest in accounts receivable and proceeds of accounts receivable collected by the bankruptcy estate. Now, what the order didn't hold... And we don't dispute that. And we didn't collect it. But what the order didn't determine was... It didn't make any determinations regarding the bank's claim against Hitachi at all. And it didn't determine that the bank's claims against Hitachi were cyber home bankruptcy estate property. The court didn't do that. The bankruptcy estate has no interest in these claims. The bankruptcy estate's been paid in full on these invoices. That's why the bankruptcy estate hasn't pursued this. If they had a claim, they would have sued Hitachi. But they don't. The only party that has a claim is the bank. Because the bank was wrongfully denied this payment eight months prior to bankruptcy. We got it. And the only way it fits within the terms of the order is if that's somehow property of the bankruptcy estate. Got it. And the argument is it is not. Okay. Thank you. Thank both sides for their argument. Tauchung Bank v. Hitachi High Technologies now submitted for decision. Thank you very much.
judges: Mills, Goodwin, Fletcher W.